## DeArmond's Estate

*Samuel D. Conver* and *W. LeRoy McKinley*, for executor.

*Maxwell Strawbridge* and *Harry M. Sablosky*, for original purchaser.

*Roland Fleer*, for prospective purchaser.

DANNEHOWER, J. (Court of Common Pleas of Thirty-eighth Judicial District), specially presiding, October 9, 1945.—This matter is presently before the court on a petition for leave to withdraw a petition

for the private sale of real estate for the payment of decedent's debts.

The decedent died a resident of Philadelphia County, on September 14, 1944, leaving a will duly probated in the office of the register of wills of that county, and letters testamentary thereon were granted to J. Keyser DeArmond, the executor named therein.

On May 10, 1945, the executor filed in this court a petition for the private sale of real estate situate in this county for the payment of decedent's debts, said petition being based on section 16 of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §551 et seq.

From the petition it appears that the executor had previously requested and obtained leave of the Orphans' Court of Philadelphia (the court having jurisdiction of the accounts of the executor) to apply to this court in the manner stated. The petition for sale, in addition to the usual averments, sets forth the following information with reference to the premises in question, being 301 Latches Lane, Merion, Montgomery County (see par. 4(b) of petition) : "On August 24, 1944, the decedent, for his own convenience in handling the property, and because of ill health and failing eyesight, conveyed title to this property to his son, your petitioner, and the latter's wife, Emily J. DeArmond.

"On September 6, 1944, your petitioner and his wife entered into an agreement to sell said property to Benjamin N. Winn for the sum of $13,750, of which $2,000 was then paid on account and immediately transferred by your petitioners to the business account of decedent.

"On September 14, 1944, as above recited, the decedent died, and it then became apparent that his estate was insolvent on August 24, 1944, the date of the conveyance to your petitioner and his wife.

"As a result of the insolvency of the decedent, it has been impossible for your petitioner and his wife, as

individuals, to convey a clear title to said premises to the above-named purchaser. Your petitioner and Emily J. DeArmond, his wife, stand ready to convey title to said premises to your petitioner as Executor of the Will of the said George J. DeArmond, deceased, and your petitioner as such executor, is desirous of complying with the terms of the contract of sale with the said Benjamin N. Winn by the conveyance of title to him and his wife—the funds so received upon such conveyance to constitute a part of the decedent's estate and be available for the payment of his debts."

The petition concludes with a prayer that the executor be authorized to accept a deed from the individual titleholders, and then to make the private sale to Winn and wife.

A preliminary decree was entered, fixing June 4, 1945, at 10 o'clock a.m. in the orphans' courtroom in the court house, as the time and place for a hearing, directing the giving of notice, and providing that unless exceptions or objections were filed, a final decree would be entered.

On the date so fixed, counsel for petitioner presented proofs of publication and posting of notices. Counsel for one Paul B. Hogans filed a written objection to the proposed sale because of insufficiency of price, and indicated his intention to file a written offer of a substantial increase in price. Upon inquiry, it appeared that the proposed purchaser, named in the petition, was neither present in person nor represented by counsel, and in order to give him an opportunity to appear and protect his interests, the matter was continued by the court until June 13, 1945, at two o'clock p.m.

On the continued date counsel for Mr. Hogans filed a written offer of $18,000 in cash for the property, accompanied by a certified check in the sum of $1,500. Thereupon, the executor, through counsel, filed the present petition for leave to withdraw the petition for

the sale of the real estate. This petition alleges that the real purpose of the original petition was to comply with the agreement to sell to Winn and wife, that the method erroneously pursued was at the suggestion of "the Title Company", that the correct procedure would have been to petition the proper court under section 18 of the Fiduciaries Act for leave to carry out the contract of sale entered into in the lifetime of the decedent. An answer on behalf of Mr. Hogans was filed in response to a rule granted. This answer does not raise any serious questions of fact but challenges the right to withdraw the petition to sell, and urges the dismissal of the petition for leave to withdraw. Argument was had and briefs were submitted, and the matter is now pending for decision.

One of the main reasons relied upon in challenging the right to withdraw the petition to sell is that the actions of the executor show bad faith, particularly because to permit such withdrawal will result in depriving the estate of the increase in price for the property amounting to $4,250. It is true that fiduciaries, and courts as well, should be assiduous to obtain for estates the highest price, so that the persons interested therein may receive the greatest possible benefit. Many sales have been set aside because of the failure of a fiduciary to make the best possible bargain. But we cannot agree that petitioner's actions in seeking to withdraw his petition constitute bad faith on his part. In fact, in the light of all the circumstances, he has exhibited good faith throughout, and it is because of our conviction in that regard that we do not hesitate to permit the requested withdrawal.

From the time petitioner, with his wife, took title to the property he has acted in an extremely fair and frank manner. In his petitions both to the Orphans' Court of Philadelphia and to this court, he clearly stated that the conveyance by the decedent was for

decedent's own convenience; it was stated with equal clarity that the down money had been paid over to decedent, and besides it was explicitly stated that the petition was filed to enable petitioner to comply with the terms of the sale agreement made with Winn. At every stage of the proceedings, it was clearly manifested that whatever was being done was being done in recognition of the agreement with Winn, and for the purpose of carrying out all the terms of that agreement. That petitioner was inadvertently led into error, presumably by a title company that was anxious to remove all possible objections to the title, is to be regretted. But when it appears that the error can be corrected, and the petitioner permitted honorably to perform his contract, he should in good conscience be allowed to abandon an improper procedure unthinkingly embarked upon.

It is urged that the withdrawal should not be permitted as it would prejudice the rights of an intending purchaser, who has a certain standing before the court. Admittedly, an intending purchaser has a standing to object to a sale on the ground of insufficiency of price: Dorworth's Estate, 49 Montg. 289 (1933). But it cannot successfully be contended that such "standing" vests him with rights that would rise higher than those of a purchaser who in decedent's lifetime had agreed in writing to buy the property. The equities in favor of the original purchaser are much stronger than those in favor of the intending purchaser. True enough, the withdrawal of the petition will have the effect of depriving the latter of whatever "rights" he may have, but any other course would deprive the original purchaser of an even more valuable right. We cannot regard the "standing" or "rights" of the intending purchaser as being superior to those of the original purchaser, the fiduciary (who

is also the only person interested under the will) and the decedent's creditors.

It is also urged that the decedent's conveyance, having been made without consideration, while insolvent, was void under the Uniform Fraudulent Conveyance Act, and that the agreement of sale subsequently entered into was therefore a nullity. Assuming that the conveyance would come within that act, the only persons entitled to attack its validity were creditors. No creditor has seen fit to assert such a remedy, and certainly the intending purchaser cannot. From the facts as they appear from the record, the conveyance was not intended to transfer any beneficial interest to the petitioner and his wife, who evidently were acting as trustees or "straw" parties for the decedent. It does not strike us as unusual that in such a case no formal agreement of agency or trust was entered into between the decedent on the one hand and his son and daughter-in-law on the other.

The narrow question here involved is whether the court, in its discretion, should permit the withdrawal of this petition. We feel this question could have been answered affirmatively without a great deal of discussion or explanation, but in order to be fair to the intending purchaser, whose counsel has been most earnest in his behalf, we have considered the various questions raised at some length. We have carefully considered all the authorities cited by counsel, but in our opinion none is controlling of the present situation.

And now, October 9, 1945, for the reasons given in the foregoing opinion, the rule granted on June 13, 1945, is made absolute, and J. Keyser DeArmond, executor, is hereby granted leave to withdraw his petition for the private sale of real estate for the payment of debts.